UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ADAM FLANDERS,    )  |   |
|   )   |   |
|     Plaintiff    )   |   |
|   )   |   |
| v.    )  | 1:12-cv-00262-JAW |
|   )   |   |
| MASS RESISTANCE and    )   |   |
| BRIAN CAMENKER,    )   |   |
|   )   |   |
|     Defendants    )   |   |

**RECOMMENDED DECISION**

This case, which the defendants removed from the Maine District Court in Belfast, concerns defamation and other claims of plaintiff Adam Flanders stemming from the Internet publication by defendants Brian Camenker and Mass Resistance[1] of their commentary on a letter Flanders wrote and disseminated publicly in 2007. Before me are (1) the defendants' objection (ECF No. 16) to Flanders's surreply (ECF No. 14), and (2) the defendants' motion to dismiss (ECF No. 6) the complaint (ECF No. 1-1).[2] For the reasons stated below, I deny the defendants' objection to Flanders's surreply. I recommend that the Court grant the motion to dismiss.

---

[1] According to an affidavit filed by defendant Brian Camenker, "Mass Resistance" is a d/b/a used by Parents Rights Coalition, Inc., which is not currently named as a party to the action. (Camenker Aff. at 1, ECF No. 6-1.)

[2] There appears to have been some confusion related to the removal of this case from state court. The document I have identified as the complaint in this case is the document that accompanied the Notice of Removal (ECF No. 1-1). It is dated August 3, 2012, and was filed in this Court on September 3, 2012. On September 5, 2012, defendants' counsel complied with this Court's Procedural Order (ECF No. 3) and filed what he certified was the entire state court record. (ECF No. 7.) The complaint as filed in the state court is dated June 29, 2012, and according to defendants' counsel the complaint containing Count 5, while it had been served on defendants on August 16, 2012, had not yet been filed in state court. On November 9, 2012, I instructed the federal clerk's office to obtain a current copy of the docket sheet from the Belfast District Court. I have reviewed that docket sheet and it appears that the Complaint that was "removed" was never actually filed in state court. The only material difference I can find between the original complaint and the "amended" complaint is the addition of Count 5. Flanders has never suggested that the Court should not consider the allegations in Count 5 and I have based my review upon the operative pleading that was filed with the Court on September 3, 2012.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Flanders alleges that the defendants first published defamatory statements about him in 2007 in conjunction with their posting on the Internet of a letter Flanders wrote dated January 13, 2007.  (Compl. at 1.)  Flanders addressed the letter (Letter, ECF Nos. 6-3, 6-5 at 1) "to whom it may concern" and alleges that he sent it to the "Bureau of Health" and the Maine Christian Civic League.  (Response in Opposition to Motion to Dismiss, ECF No. 12, at 1; Surreply at 1.)[3]

In the letter, Flanders asserted that he was a twenty-year-old youth member of a non-profit organization whose mission was to provide support and advocacy for gay, lesbian, bisexual, transgender, and questioning youth in the Rockland area.  He expressed a number of criticisms of the organization, including a lack of appropriate supervision, which resulted in sex between him and a fourteen-year-old youth member on repeated occasions, and possibly among other members during meeting times; underage smoking during meeting breaks; attendance at meetings by youths who were under the influence of drugs or alcohol; verbal harassment that included joking about pedophilia by one of the organization's adult advisors; inappropriate responses by advisors when members felt suicidal; nude showering of an adult advisor with a fourteen-year-old youth member; inappropriate touching of Flanders by one of the adults at an organization social function; and lying by adult advisors to parents.  Flanders alleged that he was expelled from the group after he assaulted a youth member, was restrained by adult advisors, and was arrested on domestic violence charges.  The complaint does not allege that the republication of the letter itself was defamatory; rather, the defamation claim is focused on the defendants' commentary about the letter.  (Compl. at 1-2.)

---

[3]   In the discussion section of this recommended decision, I address my reasons for taking into account Flanders's opposition to the defendants' motion to dismiss and his surreply for purposes of analyzing his complaint and the defendants' motion to dismiss.

Flanders alleges that the defendants kept their commentary and his letter posted online for several years, and on June 8, 2012, the defendants "published a new and even more defamatory article specifically targeting" him. (Compl. at 1-2.) The essence of his allegations seems to be that although his letter did not contain self-defamatory statements, the defendants made false and defamatory statements about him by mischaracterizing the statements he made in the letter. Flanders's allegations concerning the defendants' commentary on the letter are basically as follows: (1) he admitted in the letter that he had engaged in sex with two fourteen-year-old boys, but he asserts that that activity was not illegal because he was slightly less than five years older than the boys; (2) he admits that he was subsequently convicted of sexual abuse of a minor, but he asserts that that conviction involved a different incident than the sex he described in his 2007 letter; and, consequently, (3) the defendants' statement that the letter described illegal sexual activity is false. Flanders's defamation claim is also based on his allegation that the defendants falsely stated that Flanders has engaged in a continuing course of conduct. Finally, Flanders alleges that the defendants falsely accuse him of perjury and making false reports in conjunction with his harassment complaint against them. (Compl. at 3; Surreply at 1-2.)

Although Flanders did not attach a copy of his 2007 letter or the alleged defamatory commentary to the complaint, the defendants attached to their motion to dismiss copies of the letter (ECF No. 6-3) and the web pages where the letter and the defendants' commentary were posted (ECF No. 6-5, 6-6). One of the web pages (ECF No. 6-5) indicates that it was posted in January 2007, and the other (ECF No. 6-6) indicates that it was posted on June 8, 2012, and this is consistent with Flanders's allegations. (Compl. at 2.) Flanders's opposition to the motion to dismiss does not raise any substantial dispute that the content of the letter as posted on the

3

Internet is, for purposes of the substantive issues relevant to his complaint, his content, nor does he dispute that the commentary set forth in those web pages is that referenced in his complaint.

In addition to the defamation claim, Flanders asserts claims for harassment, intentional infliction of emotional distress; and invasion of privacy. (Compl. at 2-3.) He alleges that he obtained a court factual finding of harassment against Camenker. (Compl. at 1.)

## II. DISCUSSION

### A. Consideration of matters outside the pleadings

Before addressing the merits of the motion to dismiss, I explain why I have taken into account Flanders's opposition to the motion and his surreply, in addition to the complaint. Ordinarily on a motion to dismiss, the only pleading the court considers is the complaint, and the court "accepts as true Plaintiff's well-pleaded factual averments and draws all inferences reasonably extractable from the pleaded facts in the manner most congenial to the plaintiff's theory." Johnson v. Univ. of Me. Sys., No. Civ. 05-202-P-S, 2006 WL 305214, at *1, 2006 U.S. Dist. Lexis 7300, at *2 (D. Me. Feb. 8, 2006) (internal quotation marks omitted). Pursuant to Fed. R. Civ. P. 12(d), consideration of "matters outside the pleadings"[4] generally converts a motion to dismiss to a motion for summary judgment. In addition to the general rule that only the complaint is considered on a motion to dismiss is the additional and independent procedural rule that motion filings consist of the motion, a response by the non-moving party, and a reply by the moving party, but no additional filings. D. Me. Loc. R. 7. Here, Flanders filed a surreply to the defendants' reply. The defendants correctly cite the general rule that surreplies are not permitted without leave, and that leave is granted only in rare instances when there is new matter introduced in the reply. Animal Welfare Inst. v. Martin, 588 F. Supp. 2d 70, 81 (D. Me. 2008).

---

[4] Pursuant to Fed. R. Civ. P. 7(a), the pleadings in a litigation include a complaint and various other pleadings not applicable here.

In this case, however, because Flanders is acting pro se, i.e., without counsel, the court may review his various filings under "less stringent standards" than it would when reviewing pleadings drafted by lawyers. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). The pleadings of a pro se plaintiff may be interpreted in light of his or her supplemental submissions. See Wall v. Dion, 257 F. Supp. 2d 316, 318 (D. Me. 2003). "[C]ourts should endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects." Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 20 (1st Cir. 2004) (internal quotation marks and alteration omitted). For this reason, I have considered Flanders's opposition to the motion (which he calls his "answer") and his surreply (which he calls his "opposition") in addition to his complaint.

There is interplay between the relatively lenient review of pro se motion filings and a separate procedural requirement in defamation actions that the plaintiff be restricted to litigating only the defamatory language that is alleged in the complaint. Under federal pleading rules, "the pleadings in a defamation case need to be sufficiently detailed to the extent necessary to enable the defendant to respond." Bishop v. Costa, 495 F. Supp. 2d 139, 141 (D. Me. 2007). The First Circuit has noted in that regard that "a defendant is entitled to knowledge of the precise language challenged as defamatory, and the plaintiff therefore is limited to its complaint in defining the scope of the alleged defamation." Phantom Touring, Inc. v. Affiliated Publ'ns, 953 F.2d 724, 728 n.6 (1st Cir. 1992). Although a court must find that the language challenged is set forth in the complaint, this does not mean that defamation claims are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Bishop, 495 F. Supp. 2d at 141. Applying both the rule that defamation claims must be articulated in the complaint itself

and the discretion I have to consider certain of Flanders's supplemental filings[5] due to his pro se status, I conclude that I may review the opposition and surreply to the extent they further articulate claims that are substantially set forth within the complaint itself.

Regarding the filings of defendants Camenker and Mass Resistance, in addition to the motion to dismiss (ECF No. 6) and the reply (ECF No. 13), I have considered three documents outside the pleadings—specifically, a copy of Flanders's 2007 letter (ECF No. 6-3) and two web pages (ECF Nos. 6-5, 6-6), all of which were attached as exhibits to the Affidavit of Brian Camenker (ECF No. 6-1) and filed in support of the defendants' motion. Nevertheless, I do not recommend that the motion to dismiss be treated as a summary judgment motion. In general, the court may only consider the extraneous material by applying "the more stringent standards" applicable to motions for summary judgment, see Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (internal quotation marks omitted), and the Court may do so only if it gives the parties "'a reasonable opportunity to present all the material that is pertinent to the motion.'" Id. (quoting Fed. R. Civ. P. 12(d)). However, the court may consider documents that are not reasonably subject to challenge for lack of authenticity, documents that are central to the claim, or documents that are sufficiently referred to in the complaint, without treating the motion as one for summary judgment. Id. Here, the operative documents for purposes of Flanders's allegations are the two web pages and Flanders's 2007 letter. Flanders states that he cannot confirm the authenticity of the letter (Opp'n. at 1; Surreply at 2), but he does not raise any substantive challenge to either the letter or the web pages.

---

[5] This approach does not mean that I have, or could have, considered the numerous exhibits filed in state court and identified as part of the so called "minimum contacts" claim (See ECF Nos. 7-9 through 7-15) in the state court record.

## B. Personal jurisdiction

The defendants cite two grounds for their motion to dismiss: lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), and failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). (Mot. at 1.) Their personal jurisdiction argument is based on the substance of their companion defense of failure to state a claim. Essentially, they argue that personal jurisdiction fails when a complaint fails to state a claim, Flanders's complaint fails to state a claim, and therefore personal jurisdiction is lacking. (Mot. at 2-4; Reply at 2.) "A contention that the complaint states no claim against the defendant is not properly raised on a motion to dismiss for want of jurisdiction because the motion goes to the sufficiency of the claim and should be asserted under Rule 12(b)(6), although the district court may adjudicate the motion and ignore the way it is captioned." 5B Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, Federal Practice & Procedure § 1351 (3d ed. 2004). I do not address the issue of minimum contacts and whether the exercise of jurisdiction is consistent with the Due Process Clause of the United States Constitution, see Daynard v. Ness, Motley, Loadholt, Richardson, & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002), because I do not believe the defendants have truly put the issue of lack of personal jurisdiction in play. Although the plaintiff has the burden of proving the existence of the requisite personal jurisdiction, Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n., 142 F.3d 26, 34 (1st Cir., 1998), a defendant must assert the defense of lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b), or risk waiving it, pursuant to Fed. R. Civ. P. 12(h). If a defendant asserts a waivable defense by motion, he or she must develop the argument or risk a finding that it has been waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (noting the rule "that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

7

Here, the defendants asserted in passing that they lack "a significant connection with Maine." (Mot. at 3.) I conclude that the lack of argument on the issue of minimum contacts amounts to a waiver of the defense of personal jurisdiction. See id.

### C. Failure to state a claim

To state a claim, a plaintiff must set forth (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a). In deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a claim for recovery that is "'plausible on its face.'" Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. (internal quotation marks omitted).

#### 1. Defamation

The defendants make several arguments in support of their motion to dismiss: (1) Flanders consented to the republication of his 2007 letter by voluntarily self-publishing the letter in a public forum (Mot. at 6); (2) the defendants' statements are protected by the First Amendment, which requires an allegation of actual malice that Flanders has not made (Mot. at 6-7); (3) the defendants' statements are either true facts or constitute expressions of opinion (Mot.

at 8-9); and (4) some of the claims are too vague to meet the requirements for pleading defamation (Mot. at 9).

"Under Maine common law, a plaintiff alleging defamation must show a false and defamatory statement published without privilege to a third party resulting in harm to the plaintiff." Levesque v. Doocy, 560 F.3d 82, 87 (1 st Cir. 2009) (citing Lester v. Powers, 596 A.2d 65, 69 (Me. 1991)). The parties dispute the degree of fault that must be shown in this case, and I briefly discuss this issue although I conclude that the motion to dismiss should be granted regardless of which standard applies. The more lenient standard for a plaintiff to meet is "fault amounting to at least negligence on the part of the publisher." Rippett, 672 A.2d at 86. The stricter standard advocated by the defendants (Mot. at 6-7) is "actual malice," which requires the plaintiff to show that the defendant acted "with knowledge that the statements were false or with reckless disregard of the statements' falsity." Pan Am Systems, Inc. v. Hardenbergh, No. 2:11-cv-00339-NT, 2012 WL 1712263, at *3, 2012 U.S. Dist. Lexis 67020, at *7-8 (D. Me. May 14, 2012) (citing New York Times Co. v. Sullivan, 376 U.S. 254, 279-83 (1964); Curtis Publ'g v. Butts, 388 U.S. 130, 154-55 (1967)). The actual-malice standard applies to cases that involve "[p]rivate individuals claiming to be defamed by statements relating to matters of public interest or concern." Id. at *3; 2012 U.S. Dist. Lexis 67020, at *8 (citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 349 (1974)).

Certain categories of defamatory statements, including statements falsely alleging a punishable criminal offense, are considered defamation per se and do not require proof of special harm. Sandler v. Calcagni, 565 F. Supp. 2d 184, 192 (D. Me. 2008); Rippett v. Bemis, 672 A.2d 82, 86 (Me. 1996). "Defamation per se is 'relevant to damages, not to liability.'" Pan Am

9

Systems, 2012 WL 1712263, at *9, 2012 U.S. Dist. Lexis 67020, at *25 (quoting Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 135 (1st Cir. 1997)).

The defendants invoke the doctrine of voluntary self-publication as a defense to liability. (Mot. at 6.) I decline to apply the doctrine because I conclude it is inapplicable to the facts as Flanders has pleaded them. This Court has addressed the typical situation in which the doctrine of self-publication comes up, which is "in employment disputes where the originator of the defamatory statement has reason to believe that the defamed person will be under strong compulsion to disclose the contents of the defamatory statement to a third person." Carey v. Mt. Desert Island Hosp., 910 F. Supp. 7, 11-12 (D. Me. 1995) (distinguishing between voluntary and compelled self-publication and holding that "[c]ompelled self-publication . . . falls outside the rule against voluntary republication, or at a minimum constitutes a palatable exception"). Compelled self-publication is in contrast to the situation in which a plaintiff has consented to publication of the statements. See Andrew M. Horton & Peggy L. McGehee, Maine Civil Remedies ch. 20-2(a) at 387-88 (4th ed. 2004) (stating that a "form of justification which provides a complete defense [to a defamation claim] is consent—a showing that the plaintiff has consented to the publication of the statement complained of normally relieves the defendant of liability"). Flanders does not allege that he self-published any defamatory content at all; he clarifies this point in his opposition to the motion. (Opp'n at 1.) He does not view as defamatory the original letter he wrote and circulated in 2007. His defamation case rests entirely on the commentary published by the defendants, not on the actual contents of the original "to whom it may concern" letter.

I address each of the publications as Flanders alleges them in the complaint. Count 1 of the complaint concerns the web page that was posted in 2007. (ECF No. 6-5.) The only specific

allegation is that "[t]he Defendants falsely allege that the Plaintiff accused other parties of child molestation and falsely accuse the Plaintiff of child molestation when in fact no person, including the Plaintiff, was ever charged with a crime based on the contents of the letter." (Compl. at 1.) Contrary to Flanders's allegations, the defendants did not use the term "child molestation" in that publication. Rather, the defendants stated that Flanders's letter "includes his own admission of sexual relations with two younger boys." (ECF No. 6-5 at 1.) Flanders did admit in the letter that he had had sex with two boys who were age fourteen at the time, and he alleged that, as to one of those incidents, he was age eighteen at the time. (Id. at 2-3.) The defendants also did not falsely accuse Flanders of in turn falsely accusing others of child molestation; rather, the defendants said that Flanders "wrote this shocking letter about the outrageous abuses going on between adults and kids in the local 'gay youth' club." (Id. at 1.) Flanders himself accused some of the adult advisors and adult members of the group of abusing youth members. (Id. at 1-3.) In sum, as to Count 1 of the complaint, the statements about which Flanders complains are not defamatory because they do not falsely allege that Flanders had admitted to illegal activity in his 2007 letter and because Flanders does not allege that the defendants defamed him with false allegations of legal but defamatory activity. See Carey, 910 F. Supp. at 11-12.

Count 2 of the complaint focuses on the second publication, which was the web page published on June 8, 2012. (Complaint at 2; ECF No. 6-6.) Flanders alleges that the defendants falsely accused him of the following: "[s]exually molesting a 14-year old boy (specifically alleging the Plaintiff was convicted)"; "[i]llegally having sex with young boys"; "[f]iling a fraudulent complaint in the Maine courts"; "[c]riminally abusing the legal process associated with protection orders"; "[s]tating lies and dishonesties in a lawful complaint made under oath";

11

and "[f]iling a false report". (Id. at 2.)  Regarding statements about Flanders's sexual activity with young boys, the defendants made the following comments in the June 8, 2012, publication: "Why did Flanders write this letter, distribute it widely, and then continue having sex with young boys," and "[w]e've been told by people in Maine who followed this that the minor is one of the boys Flanders describes in his 2007 letter." (ECF No. 6-6 at 3.)

"Whether a false statement conveys a defamatory message is a question of law." Morgan v. Kooistra, 2008 ME 26, ¶ 26, 941 A.2d 447, 455.  Here, the detailed allegation of defamatory content that Flanders makes is that although it is true that he has been convicted of sexual abuse of a minor, it is false that the victim involved in that conviction was either of the boys he discussed in his 2007 letter. (Surreply at 2.)  The crux is to determine whether it is the false or the true portions of a defendants' statements that are defamatory because, under Maine defamation law, if a defendant "is able to demonstrate the truth of that portion of the statement which alone makes it defamatory, he should be deemed to have supplied an adequate defense to the statement taken as a whole." Picard v. Brennan, 307 A.2d 833, 836 (Me. 1973) (noting that the "slanderous sting" in a defamation action concerning statements about employment termination "lies in the reason charged for dismissal and not in the mere fact of discharge").

Here, the potentially defamatory portion of the defendants' statements is something that Flanders acknowledges is true, i.e., that Flanders was convicted of sexual abuse of a minor.  Flanders's assertion (Surreply at 2) that the conviction involved someone who was not either of the boys Flanders described in the letter is not the portion of the defendants' statement that carries the "sting."  The same holds for the statement by the defendants in which they ask, "Why did Flanders write this letter, distribute it widely, and then continue having sex with young boys?" (ECF No. 6-6 at 3.)  The "sting" in that statement is the implication that Flanders had sex

12

with several young boys, but that is a fact that Flanders admits. (Surreply at 1-2.) As to both statements, it is the true and therefore the non-actionable portion of the statement that is potentially defamatory.

Several of the allegations in Count 2 of the complaint pertain to Flanders's use of legal process; he alleges that the defendants falsely accuse him of having filed a fraudulent complaint, abused legal process, lied under oath, and filed a false report. (Compl. at 2.) On the web page, the defendants did use the word "fraudulent complaint" to describe Flanders's complaint for protection from harassment and stated that it was "a complete abuse of the process and intent of harassment and restraining orders" and made up of "absurd lies and dishonesties." (ECF No. 6-6 at 5.) However, the defendants did not stop there; rather, they identified the facts on which these characterizations were based. (Id.) Flanders does not contest any of these underlying factual statements, which were that the complaint involved a domestic dispute, that Flanders requested an order that Camenker stop harassing him, that he included certain language in the harassment complaint, and that he included part of his 2007 letter with the complaint. (ECF No. 6-6 at 5-6.)[6] A statement of opinion that "does not imply the existence of undisclosed defamatory facts" is not actionable. Lester, 596 A.2d at 69. The defendants' characterization of the harassment complaint as fraudulent, abusive, and dishonest is based on disclosed non-defamatory facts rather than undisclosed defamatory facts, and it is therefore not actionable. See id.

Count 3 of the complaint alleges additional instances in which Camenker repeated the defamatory comments by republishing them in various media outlets. It contains no detailed allegations of any false statements. See Bishop, 495 F. Supp. 2d at 141 (noting that the pleadings in a defamation case need to be sufficiently detailed). To the extent Count 3 simply

---

[6] There is an interactive link on the website that purportedly connects to a copy of the complaint for protection from harassment filed in the state court. (ECF No. 6-6 at 6.) Flanders does not dispute that the copy accurately reflects the harassment complaint he filed.

repeats the allegations of Counts 1 and 2 it fails for the same reasons those counts fail. To the extent Count 3 purports to allege additional defamatory content it fails because it is not sufficiently detailed to enable the defendants to respond.

Count 4 of the complaint alleges that the defendants made a third web page publication, this time on June 18, 2012. (Compl. at 2-3.) The defendants did not attach a copy of the June 18, 2012, web page to their affidavit in support of the motion to dismiss. (Mot. at 1.) Flanders alleges that on the June 18 posting, the defendants repeated the prior statements but also added a false accusation that Flanders was "backed by some sort of 'homosexual lobby' that was illegally intimidating the Defendants and other 'pro-family organizations.'" (Compl. at 2.) This statement does not allege that the defendants falsely accused Flanders himself of criminal activity. See Sandler, 565 F. Supp. 2d at 192 (noting that statements falsely alleging a punishable criminal offense may be considered defamation per se); Rippett, 672 A.2d at 86 (same). Flanders alleges that the third publication included a request for donations on behalf of Mass Resistance to enable it to "fight back" against Flanders. That allegation does not further advance the defamation claim. I recommend that the defamation claim set forth in Count 4 be dismissed. Count 4 also contains claims of harassment, emotional distress, and invasion of privacy, which I address separately below.

Count 5 of the complaint alleges additional instances, on specified and unspecified dates in July 2012, in which Camenker published defamatory statements on the defendants' website and in other venues. (Compl. at 3.) These allegations, similar to those in Count 3, contain no detailed recital of the specific false statements involved and how they might differ from the statements described in Counts 1 and 2. I recommend the dismissal of Count 5.

14

**2. Other claims**

In addition to Flanders's defamation claims, he attempts to state claims for harassment, intentional infliction of emotional distress, and invasion of privacy. (Compl. at 3; Opp'n at 4.) I recommend the dismissal of these claims. Regarding the harassment claim, the parties do not dispute that Flanders obtained an order of protection from harassment against Camenker. (Compl. at 1; ECF No. 6-6 at 6.) Although I have only the parties' assertions rather than the official state court record before me, I accept their assertions about the existence of the order and I note that Flanders asserted in one of his state court filings that the protection-from-harassment action involved substantially the same conduct he alleges in the defamation action. (ECF No. 7-9 at 1.) Other than a statutory protection-from-harassment claim, I have no idea what "harassment" claim Flanders seeks to assert in this court. Indeed the interactive link contained within the June 8, 2012, website contains copies of the protection-from-harassment complaint and order and thus these matters do not appear to be documents about which there is any dispute. "A federal court must give the same preclusive effect to issues already decided as would be given by the courts of the state in which the federal court sits." Cinelli v. City of Revere, 820 F.2d 474, 479 (1st Cir. 1987). To the extent Flanders intended to state a claim for harassment, I recommend that that claim in this Court be dismissed based on the preclusive effect of the existing state court order of protection from harassment.

A claim for intentional infliction of emotional distress exists where "(1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from the defendant's conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community; (3) the actions of the defendant caused the

plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." Lougee Conservancy v. CitiMortgage, Inc., 2012 ME 103, ¶ 25, 48 A.3d 774, 784 (internal quotation marks omitted). Because Flanders has alleged no specific facts that would support these elements, I recommend that this claim be dismissed.

Lastly, I also recommend that Flanders's claim of invasion of privacy be dismissed. The right of privacy may be tortiously invaded in several ways, including "unreasonable intrusion upon the seclusion of another"; "unreasonable publicity given to the other's private life"; or "publicity that unreasonably places the other in a false light before the public." Nelson v. Maine Times, 373 A.2d 1221, 1223 (Me. 1977) (citing Restatement (Second) of Torts §§ 652B, 652D, 652E). Flanders has not alleged facts that would support a claim for invasion of privacy.

### D. Dismissal with prejudice

I recommend that all counts of the complaint be dismissed with prejudice. Flanders has had ample opportunity to fully state his claims. I recognize that the federal pleading standard in the post-Iqbal world presents challenges and that pleading a defamation claim with the requisite specificity is a daunting task even without the Iqbal overlay. See Pan Am Systems, 2012 WL 1712263, at *2-3, 10, 2012 U.S. Dist. Lexis 67020, at *7-8, 29-30. I have liberally construed Flanders's complaint in light of both his response in opposition to the motion to dismiss and his surreply. See Erickson, 551 U.S. at 94 (noting that less stringent standards apply to pleadings drafted by pro se parties); Rodi, 389 F.3d at 20 (noting that courts must attempt to guard against the loss of pro se claims due to technical defects); Johnson, 2006 WL 305214, at *1; 2006 U.S. Dist. Lexis 7300, at *2 (noting that on a motion to dismiss the court construes well-pleaded factual allegations in a manner most favorable to the plaintiff); Wall, 257 F. Supp. 2d at 318

(noting that a pro se party's pleadings may be interpreted in light of supplemental submissions). Because Flanders's complaint and supplemental submissions failed to plead the defamation claim with sufficient detail, I have reviewed the alleged defamatory statements that the defendants submitted that relate to Counts 1 and 2 of the complaint and found that Flanders raised no substantive objection that these were not the statements that formed the basis for his claims.  I conclude that in light of the now well-developed state of the pleadings, Flanders has failed to state a claim, and dismissal with prejudice is warranted.  If Flanders's archive of defendants' defamatory publications (see Surreply at 2) contains actual defamatory material different from the materials which were referenced and discussed in these pleadings, it was incumbent upon him to specifically plead those materials in Counts 3, 4, and 5.  The defendants' motion to dismiss put the plaintiff on notice as to the governing principles of law, including the requirement that defamation must be specifically pled.  (Mot. at 9.)

### III.    CONCLUSION

I DENY the defendants' objection (ECF No. 16) to Flanders's surreply (ECF No. 14).  I recommend that the Court GRANT the defendants' motion to dismiss.

### Notice

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

November 14, 2012              /s/ Margaret J. Kravchuk
                               U.S. Magistrate Judge